UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                        Bankruptcy No. 07-30461
                                                              Chapter 7
Keli Rae Hoffner,

        Debtor.
_____/

**MEMORANDUM AND ORDER**

By motion filed July 12, 2007, the United States Trustee seeks dismissal of this case pursuant to 11 U.S.C. § 707(b)(3). The U.S. Trustee alleges the totality of Debtor Keli Hoffner's circumstances, including her ability to repay a significant portion of her unsecured debt, demonstrates that her bankruptcy filing is an abuse. Debtor filed a response on September 11, 2007, resisting the motion. On October 10, 2007, the parties agreed to waive oral argument, and the Court took the matter under advisement.

*Factual Background*

Debtor works as an insurance agent and lives with her ex-husband, a seasonal construction worker, and their two minor children. Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 1, 2007. On June 13, 2007, Debtor filed her bankruptcy schedules. Debtor's Schedule D (Creditors Holding Secured Claims) lists six secured creditors with claims totaling $227,209.18:

| Creditor | Secured Property and Value | Debt |
| --- | --- | --- |
| American Family Fin'l Serv. | '04 Pontiac Grand Am - $7,000 | $ 9,800.00 |
| American Family Fin'l Serv. | Homestead - $260,000 | 78,000.00 |
| Bank of America | Homestead - $260,000 | 93,600.00 |
| First Community Credit Union | '06 Utility Trailer - $4,000 | 3,800.00 |
| GMAC | '04 Chevy Tahoe - $16,000 | 13,509.18 |
| Great Southern Bank | '06 Tracker Boat - $25,000 | 28,500.00 |

Debtor's Schedule E (Creditors Holding Unsecured Priority Claims) lists no creditors. Debtor's Schedule F (Creditors Holding Unsecured Nonpriority Claims) lists six unsecured creditors with claims totaling $71,154.18:

| Creditor | Nature of Debt | Debt |
| --- | --- | --- |
| Capital One Bank | Line of credit | $ 13,631.72 |
| Chase Cardmember Serv. | Line of credit | 6,500.00 |
| Citi Cards | Line of credit | 22,897.65 |
| Citifinancial Retail | Credit card purchases | 3,761.81 |
| Citizens Comm. Credit Union | Store fixtures/merchandise | 19,663.00 |
| Discover | Line of credit | 4,700.00 |

Debtor filed an amended Schedule I on July 18, 2007, listing combined (Debtor and her ex-husband) average monthly income of $15,411.00. The amended Schedule J filed on September 11, 2007, lists total expenses of $18,047.00, leaving negative monthly disposable income.

Some of Debtor's obligations relate to a failed retail business, Accessory Hut, LLC.

*Discussion*

Among the sections of the Bankruptcy Code amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) is section 707(b) governing dismissal of Chapter 7 bankruptcy cases. As amended, section 707(b) provides that the court "may dismiss a case filed by an individual debtor under this chapter whose debts are *primarily consumer debts* . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1) (emphasis added).

A.    Primarily Consumer Debts

The Bankruptcy Code defines a consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). If a debtor's purpose in incurring a debt is to purchase a home or make improvements to it, the debt is clearly for family or household

2

purposes and fits squarely within the Bankruptcy Code's definition of a consumer debt. Cox v. Fokkena (In re Cox), 315 B.R. 850, 855 (B.A.P. 8th Cir. 2004). The court must examine a debtor's purpose for incurring the debt in question to determine whether it is a consumer debt under section 101(8). Id. Debts incurred for business ventures or other profit-seeking activities do not fall into the category of debt incurred for personal, family, or household purposes. See Stewart v. U.S. Trustee (In re Stewart), 175 F.3d 796, 806 (10th Cir. 1999); Cypher Chiropractic Ctr. v. Runski (In re Runski), 102 F.3d 744, 747 (4th Cir. 1996); In re Booth, 858 F.2d 1051, 1054-55 (5th Cir. 1988); Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988); In re Palmer, 117 B.R. 443, 446 (Bankr. N.D. Iowa 1990).

Debtor argues that section 707(b) is inapplicable to her case because her debts are not primarily consumer debts. Debtor concedes that the two debts secured by mortgages on her residence are consumer debts. She also concedes that the debt secured by the Pontiac is a consumer debt. She asserts, however, that her other three secured debts – separately collateralized by a Chevrolet Tahoe, a boat and a utility trailer – are business debts. Debtor uses the Chevrolet in her business as an insurance agent, spending many hours traveling in it to visit existing and potential insurance clients. She deducts the business miles as a business expense from her income taxes. Debtor claims the boat was purchased primarily for Debtor's use in her business as an insurance agent to entertain existing and potential insurance clients. Debtor purchased the utility trailer for her ex-husband to haul and store his work tools when he is on the road as a construction worker.

With regard to Debtor's unsecured debts, she concedes that the debt to Citifinancial Retail for credit card purchases in the amount of $3,761.81 was for personal, family or household purposes.

3

She asserts that the other five unsecured debts were all incurred for her use in her insurance business or her failed retail business.

Based on Debtor's characterization of her debts,[1] her consumer debt totals $185,161.81 owed to four[2] creditors and her business debt totals $113,201.55 owed to eight creditors. Debtor's consumer debts therefore constitute 62% of the dollar amount of her total debt,[3] but only 33% based on the number of debts.[4] Debtor urges the Court to consider both the percentage of the dollar amount of the consumer debt as well as the percentage of the number of consumer debts in deciding whether her debts are primarily consumer debts.

The majority of courts that have considered the issue have found that "primarily" means more than half of the total dollar amount owed. See, e.g., Stewart v. U.S. Trustee (In re Stewart), 175 F.3d 796, 808 (10th Cir. 1997); Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988); In re Hall, 258 B.R. 45, 48 (Bankr. M.D. Fla. 2001); In re Shelley, 231 B.R. 317, 319 (Bankr. D. Neb. 1999); In re Martinez, 171 B.R. 264, 266 (Bankr. N.D. Ohio 1994); In re Farrell, 150 B.R. 166, 118 (Bankr. D.N.J. 1992). A minority of courts have concluded that it is appropriate for the court to consider both the percentage of consumer debt as well as the number of consumer debts in deciding whether the debt is primarily consumer debt. See, e.g., In re Booth, 858 F.2d at 1055; In re Johnson, 115 B.R. 159, 162 (Bankr. S.D. Ill. 1990); In re Restea, 76 B.R. 728, 735 (Bankr. D.S.D.

---

[1] The Court does not necessarily agree with Debtor's characterization of the debts owed on the Chevrolet and the boat as nonconsumer debts. A final determination on this issue is unnecessary, however, because resolution either way would not affect the outcome.

[2] Debtor classifies the two debts to American Family Financial Services for the Pontiac and homestead as debts to separate creditors.

[3] $185,161,81 of consumer debt divided by $298,363.36 of total debt equals 0.6206.

[4] 4 consumer debts divided by 12 total debts equals 0.3333.

4

1987); In re Bell, 65 B.R. 575, 577 (Bankr. E.D. Mich.1986) (it is appropriate in defining "primarily consumer debt" to give more weight to the portion of total debt that is consumer debt and less weight to the portion of the total number of debts that are consumer debts).

The Court agrees with the majority position that the term "primarily" is unambiguous and that it means more than half of the dollar amount owed. Debtor concedes that 62% of the dollar amount of her total debt consists of consumer debts; her debts are therefore primarily consumer debts, and section 707(b) applies to this case.

B.   Consideration of Ability to Pay

One of the centerpieces of BAPCPA was the introduction of a means test to distinguish between those debtors who could afford to repay a portion of their debt and those who could not. See generally Eugene R. Wedoff, Means Testing in the New Section 707(B), 79 Am. Bankr. L.J. 231 (2005). BAPCPA amended section 707(b) to replace a presumption in favor of granting discharge with a presumption that a case was an abuse of Chapter 7 if a mathematical formula set out in the statute, referred to as the means test, yields a minimum amount of monthly disposable income. See 11 U.S.C. § 707(b)(2)(A). The means test calculates a debtor's current monthly income (CMI), as defined under section 101(10A), based on the debtor's average income for the six months preceding the month of the bankruptcy filing. If the debtor's monthly disposable income, after reducing the CMI by allowed expenses under section 707(b)(2)(A)(ii)-(iv), is more than a particular amount, the presumption of abuse arises.

The means test standards are implemented through the use of Official Form 22A — Chapter 7 Statement of Current Monthly Income and Means-Test Calculation. Debtor filed an amended

Form 22A on July 18, 2007. The amended form showed that Debtor passed the means test and the presumption of abuse did not arise.

Section 707(b)(3), however, provides that in a case in which the presumption of abuse does not arise or is rebutted, the court shall consider whether the debtor filed her petition in bad faith or whether the totality of the circumstances surrounding the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3). Debtor argues that her actual ability to repay her non-priority unsecured debts through a hypothetical chapter 13 plan may not be considered as part of the totality of the circumstances of her financial situation under section 707(b)(3) because she passed the means test. In other words, Debtor argues that the means test calculation is conclusive regarding her ability to pay her unsecured creditors. The Court disagrees.

Courts and commentators alike have overwhelmingly recognized that the section 707(b)(3) "totality of the circumstances" analysis requires a bankruptcy court to undertake an analysis of a debtor's actual debt-paying ability independent of the means test analysis under section 707(b)(2). See In re Edighoffer, 375 B.R. 789, 792-93 (Bankr. N.D. Ohio 2007); In re Zaporski, 366 B.R. 758, 771 (Bankr. E.D. Mich. 2007); In re Pfiefer, 365 B.R. 187, 192-93 (Bankr. D. Mont. 2007); In re Henebury, 361 B.R. 595, 611 (Bankr. S.D. Fla. 2007); In re Sorrell, 359 B.R. 167, 188 (Bankr. S.D. Ohio 2007); In re Lenton, 358 B.R. 651, 663 (Bankr. E.D. Pa. 2006); In re McUne, 358 B.R. 397, 399 (Bankr. D. Or. 2006); In re Richie, 353 B.R. 569, 577 (Bankr. E.D. Wis. 2006); In re Pennington, 348 B.R. 647, 650 (Bankr. D. Del. 2006); In re Pak, 343 B.R. 239, 244 (Bankr. N.D. Cal. 2006); see also Charles J. Tabb and Jilliam K. McClelland, Living with the Means Test, 31 S. Ill. U. L.J. 463, 499 (2007); Eugene R. Wedoff, Judicial Discretion to Find Abuse under 707(b)(3), 71 Mo. L. Rev. 1035, 1037 (2006).

The means test does not result in any final determination; it is simply a mechanism for generating a presumption. The presumption of abuse can be rebutted by demonstrating special circumstances under section 707(b)(2)(B) where a debtor has greater expenses and/or lower income than what is accounted for under the means test calculation. Section 707(b)(3), on the other hand, provides for circumstances where a debtor has fewer expenses and/or higher income than what is set forth under the means test. Unlike the objective means test under section 707(b)(2), section 707(b)(3) simply prescribes a more subjective test for abuse based on the totality of the circumstances.

The plain language of section 707(b)(3) is clear. Specifically, the phrase "totality of the circumstances . . . of the debtor's financial situation" necessarily includes the extent of the debtor's disposable income and ability to repay his or her creditors. Nothing in the text of section 707(b)(3)(B) provides that any aspect of the debtor's finances should be eliminated from consideration in determining whether a case constitutes an abuse of Chapter 7. If Congress had intended for section 707(b)(2) to preclude consideration of the debtor's ability to pay as a part of section 707(b)(3), it would have included language in 707(b)(3) to make clear that "the totality of the circumstances . . . of the debtor's financial situation" is not all-encompassing, as the phrase "totality of the circumstances" suggests, but is instead limited in a significant way.

In short, the Court is not persuaded that passing the means test precludes the Court from considering a debtor's ability to pay his or her creditors as one of the totality of circumstances under section 707(b)(3)(B) in determining whether that debtor's case would be an abuse of chapter 7. Accordingly, in reviewing the totality of Debtor's circumstances in this case, the Court will properly

consider, as one of those circumstances, her ability to repay her creditors even though the statutory presumption of abuse based on the means test did not arise in this case under section 707(b)(2)(A).

C. Totality of the Circumstances

The U.S. Trustee argues that Debtor's case is an abuse and should be dismissed because the totality of the circumstances of Debtor's financial situation demonstrates that she has the ability to repay a significant portion of her debt.

Debtor's amended Schedule J indicates that her monthly gross income is $12,262.00, and her amended Schedule J lists her monthly business expenses as totaling $9,048.00. Her net monthly income is therefore $3,214.00. The following expenses are shared with her non-debtor ex-husband: mortgage ($2,028); electricity and heating fuel ($325); water and sewer ($35); telephone ($60); cable TV/internet ($100); home maintenance ($300); food ($500); clothing ($150); laundry and dry cleaning ($50); medical expenses ($50); transportation ($200); recreation ($100); household items ($75); and personal care and hygiene ($75). These shared expenses total $4,048.00.[5] Because Debtor earns 50.1% of the pre-tax household net income,[6] the Court will assign her 50.1% of the shared household expenses or $2,028.05. Her non-shared expenses include a car payment ($616); life insurance ($350); car insurance ($75); boat payment ($351); and a utility trailer ($151). These non-shared expenses total $1,543.00. Subtracting Debtor's shared and non-shared expenses from her net monthly income results in -357.05 in disposable income.[7]

---

[5] The U.S. Trustee included $350.00 for life insurance and $75.00 for car insurance as a shared expense. The Court believes these expenses to be Debtor's, however, because amended Schedule J separately lists a $453.00 expense for Debtor's ex-husband's insurance.

[6] See U.S. Trustee Ex. 1.

[7] $3,214.00 (net monthly income) minus $2,028.05 (shared expenses) minus $1,543.00 (non-shared expenses) equals -357.05.

When computing a debtor's disposable income, however, a court is not required to accept at face value the income and expense figures put forth by the debtor. In re Burge, 2007 WL 2907508, at *3 (Bankr. N.D. Ohio 2007). Rather, the Court has a duty to scrutinize a debtor's expenses and make adjustments where necessary to ensure that the debtor's expenses are reasonable. Id. Although not requiring a spartan existence, frugality is required for an expense to be reasonably necessary in the context of an action to dismiss under section 707(b)(3). Id.

Not all of Debtor's expenses are reasonable. Specifically, the Court will not allow expenses of $351.00 per month for Debtor to retain a 2006 boat and $151.00 per month for a utility trailer for her ex-husband. Notwithstanding Debtor's assertion that she uses the boat to entertain potential and existing insurance clients, the Court deems the boat an unnecessary luxury item. As for the utility trailer, Debtor simply is not in a financial position to make this payment on her ex-husband's financial behalf. The disallowance of these expenses leaves Debtor with $144.95 per month in disposable income.[8]

Another important circumstance in this case is that Debtor has only 18 monthly payments remaining on her vehicle. Thus, although she may only have $144.95 to pay toward her unsecured creditors for 18 months, she will have $760.95 for 42 months for a total payment to creditors of $34,569.00. Debtor's unsecured debt totals $71,154.18, so unsecured creditors may receive a dividend of 48.6% under a Chapter 13 plan. Debtor has the ability to repay significantly toward her unsecured debt.

---

[8] The Court also questions the reasonableness of $350 per month for life insurance but has insufficient information to opine further as to this expense.

Also bearing on Debtor's financial situation is that she enjoys a stable income, and no suggestion has been made that she anticipates a material decrease in income within the next five years. Given these circumstances and Debtor's ability to repay a substantial portion of her unsecured debts in a Chapter 13 proceeding, the Court finds that proceeding under Chapter 7 constitutes an abuse under the totality of the circumstances under 707(b)(3).

Accordingly, the United States Trustee's motion to dismiss pursuant to 11 U.S.C. § 707(b) is hereby GRANTED unless Debtor opts to convert this case to a case under Chapter 13 of the Bankruptcy Code. In light of the upcoming holiday, the Court will allow Debtor twenty days, rather than the usual ten days, in which to file a motion to convert. If no such motion is filed within twenty days, this Order will become final and this case will be dismissed without further notice or hearing.

**SO ORDERED.**

Dated this November 21, 2007.

**WILLIAM A. HILL, JUDGE**
**U.S. BANKRUPTCY COURT**